**FILED**

March 7, 2023

**SEALED**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By: _____ JF _____
Deputy Clerk

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

**AU:23-CR-00043-RP**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff**<br><br>v<br><br>**(1) ABRAHAM YUSUFF**<br>**(2) MEGHAN INYANG**<br>**(3) CHRISTOPHER EDUARDO**<br>**(4) CHRISTIAN MATHURIN**<br>**(5) DILLON ANOZIE**<br>**(6) BABAJIDE OGUNBANJO**<br>**(7) AYDIN MAMMADOV**<br>        **Defendants** | **INDICTMENT**<br><br>**[Ct. 1: 18 U.S.C. § 1349 - Fraud Conspiracy;**<br>**Ct. 2: 18 U.S.C. § 1956(h) - Money Laundering Conspiracy;**<br>**Cts. 3-17: 18 U.S.C. § 1341 - Mail Fraud;**<br>**Cts. 18-34: 18 U.S.C. § 1343 - Wire Fraud;**<br>**Cts. 35-41: 18 U.S.C. §1029(a)(2) - Access Device Fraud;**<br>**Cts. 42-77: 18 U.S.C. §1028A - Aggravated Identity Theft]** |

**THE GRAND JURY CHARGES:**

### INTRODUCTION

At times relevant to this Indictment:

1.  ABRAHAM YUSUFF resided in Round Rock, Texas, and Georgetown, Texas, within the Western District of Texas.

2.  MEGHAN INYANG resided in San Antonio, Texas, within the Western District of Texas.

3.  CHRISTOPHER EDUARDO resided in Round Rock, Texas.

4.  CHRISTIAN MATHURIN resided in Nashville, Tennessee.

5.  DILLON ANOZIE resided in Charleston, West Virginia, and San Antonio, Texas.

6.  BABAJIDE OGUNBANJO resided in Austin, Texas, within the Western District of Texas.

7.  AYDIN MAMMADOV resided in Houston, Texas.

8.   Telegram was a cloud-based instant messaging and Voice-over-Internet Protocol service that allowed its users to send messages and exchange photographs, videos, documents, and other files through the Internet. Telegram did not have any servers in Texas.

9.   YUSUFF used the moniker "N***a Raw" for his Telegram profile name and saved EDUARDO's contact name in Telegram as "Chris Ne."

10. A "means of identification" was any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including a name, Social Security number, date of birth, or an access device.

11. An "access device" was any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access, that could be used alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that could be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument), such as a prepaid debit card.

12. A "prepaid debit card" was a card linked to an account at a financial institution, which could be used to receive deposits electronically, like a traditional bank account, and could be used to make purchases and cash withdrawals with funds in the account, like a traditional debit card.

13. The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

14. A Centralized Authorization File ("CAF") number was a unique nine-digit identification number assigned by the IRS to third-party tax professionals.

15. An IRS Form 8821, *Tax Information Authorization* ("authorized representative form"), was a form by which taxpayers could authorize their representative tax professional to inspect and receive their confidential tax information from the IRS. Tax professionals were identified by their CAF number, among other personal identifying information ("PII"), on authorized representative forms.

16. An IRS Form 8888, *Allocation of Refund* ("split refund form"), was a form that taxpayers could attach to their income tax return to split their claimed tax refund between up to three direct deposit accounts, including bank accounts and prepaid debit cards.

17. A "wage and income transcript" was a document that taxpayers could request from the IRS that reports income data on file with the IRS for a given tax year.

18. A "tax return transcript" was a document that taxpayers could request from the IRS that shows most line items from the taxpayer's original, filed income tax return for a given tax period. The tax return transcript included data from the tax return including the taxpayer's reported income, adjusted gross income, claimed tax credits, amount of taxes owed or refund due, use of a split refund form, and amount of refund applied to next year's estimated tax.

19. A 5071C letter ("identity verification letter") was a form letter that the IRS sent to taxpayers informing the taxpayer that they must verify their identity before the IRS could process their income tax return or issue their tax refund. To verify their identity over the phone, taxpayers needed to have the received identity verification letter, as well as their tax return and supporting documentation.

**COUNT ONE**
Conspiracy to Commit Fraud
[18 U.S.C. § 1349]

20. Paragraphs 1 through 19 of this Indictment are realleged and incorporated as though fully set forth herein.

21. Beginning at least in or about January 2018 and continuing until at least in or about December 2021, the exact dates being unknown to the Grand Jury, within the Western District of Texas, and elsewhere, Defendants,

**(1) ABRAHAM YUSSUF,**
**(2) MEGHAN INYANG,**
**(3) CHRISTOPHER EDUARDO,**
**(4) CHRISTIAN MATHURIN,**
**(5) DILLON ANOZIE,**
**(6) BABAJIDE OGUNBANJO, and**
**(7) AYDIN MAMMADOV,**

did knowingly combine, conspire, confederate, and agree together and with others, both known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

    a.   *Mail Fraud, in violation of 18 U.S.C. § 1341*, that is, knowingly devising and intending to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, described below, caused to be sent and delivered by, and did take and receive from the Postal Service and by Federal Express ("FedEx"), a commercial interstate carrier, matters and things that had been delivered by the Postal Service and by FedEx; and

    b.   *Wire Fraud, in violation of 18 U.S.C. § 1343*, that is, knowingly devising and intending to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises,

described below, caused to be transmitted by means of wire communication in interstate and foreign commerce, communications, signals, and writings.

**SCHEME TO DEFRAUD**

To accomplish the purpose of the conspiracy, YUSUFF, INYANG, EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others used, and caused others to use, the following manner and means:

22. YUSUFF, EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others obtained the PII of taxpayers and accountants, addresses at which the conspirators could receive mail for the scheme, and prepaid debit cards to which fraudulently claimed tax refunds could be directed.

23. YUSUFF and others prepared and filed and caused to be prepared and filed fraudulent tax returns that used the PII of taxpayers without their knowledge using the addresses and prepaid debit cards obtained by EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others.

24. YUSUFF, INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others received fraudulently claimed tax refunds from the IRS and used the proceeds of their fraud to purchase, among other items, designer clothing, home renovation materials, and money orders.

**A.    Preliminary Steps to Preparing Tax Returns**

25. YUSUFF and others, both known and unknown to the Grand Jury, obtained, without the taxpayers' authorization, the means of identification of taxpayers, including their names, addresses, and Social Security numbers.

26. YUSUFF and others, both known and unknown to the Grand Jury, obtained the means of identification of tax professionals, including enrolled agents and certified public accountants,

without their authorization. The means of identification included the accountants' names, addresses, and CAF numbers.

27. YUSUFF and others, both known and unknown to the Grand Jury, faxed authorized representative forms to the IRS using the means of identification of a taxpayer and an accountant, including the accountant's CAF number, to obtain access to the taxpayer's tax information. YUSUFF and others faxed these authorized representative forms to the IRS using an electronic fax service account registered to YUSUFF's Jan Lane, Georgetown, Texas residence and an email address controlled by YUSUFF.

28. YUSUFF and others submitted and caused to be submitted change of address requests to the Postal Service and caused the mail of some taxpayers, including K.K. & P.K., to be forwarded to YUSUFF's Jan Lane, Georgetown, Texas residence.

29. YUSUFF directed EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others to provide him addresses at which conspirators could receive notices, letters, transcripts, and other correspondence from the IRS ("IRS mail") and prepaid debit cards.

30. YUSUFF and others, both known and unknown to the Grand Jury, called and caused to be called the IRS purporting to be the taxpayers and their representatives and changed the addresses of the taxpayers with the IRS to an address controlled by YUSUFF, EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others. The conspirators changed the taxpayers' addresses so that the IRS would send IRS mail to the conspirators instead of the taxpayers.

31. YUSUFF and others, both known and unknown to the Grand Jury, created and caused to be created online accounts with the IRS in the names of accountants through which YUSUFF and others could electronically receive taxpayer's tax information from the IRS, including

account transcripts and wage and income transcripts. YUSUFF and others created and caused to be created the accounts without the authorization of the accountants or taxpayers.

32. YUSUFF directed INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others to obtain prepaid debit cards, to provide YUSUFF with information related to the prepaid debit cards, and to deliver the cards to YUSUFF.

33. YUSUFF and others, both known and unknown to the Grand Jury, registered and caused to be registered the prepaid debit cards obtained by INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others in the names of the taxpayers.

34. YUSUFF sent messages to EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others alerting them that mail, including IRS mail and prepaid debit cards, addressed to taxpayers would be arriving at addresses that they previously provided to YUSUFF.

35. YUSUFF, EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others received, at addresses that they controlled, IRS mail addressed to taxpayers and mail from financial institutions containing prepaid debit cards in the names of taxpayers.

36. EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others provided YUSUFF with IRS mail and prepaid debit cards sent in the names of the taxpayers.

**B.      Preparing and Filing Fraudulent Returns**

37. YUSUFF and others, both known and unknown to the Grand Jury, prepared and electronically filed and caused to be prepared and electronically filed fraudulent tax returns that used the means of identification of taxpayers without their knowledge, used the taxpayer's information obtained from the IRS, and used the addresses and prepaid debit cards obtained by EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others.

38. YUSUFF and others attached and caused to be attached split refund forms to the fraudulent tax returns that directed the IRS to split the anticipated tax refund between two or three prepaid debit cards or bank accounts that INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others controlled.

39. YUSUFF and others, both known and unknown to the Grand Jury, filed and caused to be filed approximately 371 fraudulent tax returns that fraudulently claimed over $111 million of tax refunds from the IRS.

**C.     Receiving and Laundering the Fraudulently Claimed Refunds**

40. YUSUFF, EDUARDO, MATHURIN, ANOZIE, MAMMADOV, and others received identity verification letters from the IRS to confirm the legitimacy of the filed tax returns that were addressed to taxpayers and sent to addresses controlled by YUSUFF, EDUARDO, MATHURIN, ANOZIE, MAMMADOV, and others.

41. YUSUFF and others, both known and unknown to the Grand Jury, verified and attempted to verify the taxpayers' identities with the IRS as instructed in the identity verification letters so that the IRS would process the tax returns.

42. Once the IRS deposited refunds onto the prepaid debit cards, YUSUFF, INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others used the prepaid debit cards to withdraw cash from ATMs and to purchase, among other things, money orders, home renovation materials, and designer clothing from high-end retailers.

43. YUSUFF, EDUARDO, OGUNBANJO, MAMMADOV, and others received treasury checks payable to some of the taxpayers at addresses they controlled.

44. YUSUFF, INYANG, EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others received money orders purchased with the fraudulently claimed refunds as their share of the proceeds of the conspiracy.

45. YUSUFF, INYANG, EDUARDO, MATHURIN, ANOZIE, OGUNBANJO, MAMMADOV, and others took steps to conceal their fraudulent conduct by, among other means, adding the names of taxpayers to apartment mailboxes when mail in the taxpayer's name was expected, destroying the received IRS mail, and purchasing money orders using the prepaid debit cards in amounts lower than the stores' purchaser reporting thresholds.

In violation of Title 18, United States Code, Section 1349.

## COUNT TWO
Conspiracy to Commit Money Laundering
[18 U.S.C. § 1956(h)]

46. Paragraphs 1 through 7 and 13 of this Indictment are realleged and incorporated as though fully set forth herein.

47. Beginning at least in or about January 2018 and continuing until at least in or about December 2021, the exact dates being unknown to the Grand Jury, within the Western District of Texas, and elsewhere, Defendants,

**(1) ABRAHAM YUSSUF,**
**(2) MEGHAN INYANG,**
**(3) CHRISTOPHER EDUARDO,**
**(5) DILLON ANOZIE,**
**(6) BABAJIDE OGUNBANJO, and**
**(7) AYDIN MAMMADOV,**

did knowingly combine, conspire, confederate, and agree together and with others, both known and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce and which involved the proceeds of a specified unlawful activity, that is, Wire Fraud, Mail Fraud, and Conspiracy to Commit Fraud, as

described in Count One of this Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## MANNER AND MEANS

48. The factual allegations contained in paragraphs 22 through 45 of this Indictment are realleged and incorporated herein as if copied verbatim.

49. YUSUFF, INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others purchased money orders using prepaid debit cards funded by fraudulently claimed tax refunds.

50. INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others provided some of the money orders to YUSUFF and retained some money for themselves as their share of the proceeds.

51. YUSUFF, INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others deposited some of the money orders into their personal bank accounts.

52. YUSUFF, INYANG, ANOZIE, MAMMADOV, and others used some money orders to facilitate the purchase of, among other things, used cars from automobile auctions.

53. YUSUFF mailed and caused to be mailed packages containing, among other items, money orders purchased using the fraudulently claimed refunds to others known and unknown to the Grand Jury.

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS THREE THROUGH SEVENTEEN
Mail Fraud
[18 U.S.C. § 1341]

54. Paragraphs 1 through 45 of this Indictment are realleged and incorporated as though fully set forth herein.

55. Beginning at least in or about January 2018 and continuing at least until in or about December 2021, the exact dates being unknown to the Grand Jury, within the Western District of Texas and elsewhere, the Defendants listed below, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, caused to be sent and delivered by, and did take and receive from the Postal Service and by FedEx, a commercial interstate carrier, matters and things that had been delivered by the Postal Service and by FedEx, namely, IRS correspondence, IRS transcripts, federal income tax refund checks, and prepaid debit cards, as described below.

### THE SCHEME AND ARTIFICE

56. The factual allegations contained in paragraphs 22 through 45 of this Indictment are realleged and incorporated herein as if copied verbatim.

### THE MAILINGS

57. On or about each date listed below, in the Western District of Texas and elsewhere, the Defendants listed below, for the purpose of executing the scheme and artifice to defraud, and to aid and abet the same, caused letters, prepaid debit cards, and federal income tax refund checks to be placed in the U.S. mail via the Postal Service and FedEx, as described for each count below:

| COUNT | DEFENDANT | APPROXIMATE DATE OF MAILING OR DELIVERY | MAILING |
|---|---|---|---|
| 3 | YUSUFF | May 31, 2019 | Letter from IRS addressed to J.S. & D.S. at Jan Lane, Georgetown, Texas |
| 4 | YUSUFF | June 15, 2019 | Debit card from GoBank addressed to P.L. at Jan Lane, Georgetown, Texas |
| 5 | YUSUFF | July 13, 2019 | Letter from IRS addressed to P.L. & M.L. at Jan Lane, Georgetown, Texas |
| 6 | YUSUFF | July 18, 2019 | Debit card from NetSpend addressed to J.P. at Jan Lane, Georgetown, Texas |
| 7 | YUSUFF | July 19, 2019 | Letter from IRS addressed to P.E. & S.E. at Jan Lane, Georgetown, Texas |
| 8 | YUSUFF | July 22, 2019 | Letter from IRS addressed to P.K. at Midland Rd, Midland, North Carolina, and forwarded to Jan Lane, Georgetown, Texas |
| 9 | YUSUFF | July 22, 2019 | Letter from IRS addressed to K.K. at Midland Rd, Midland, North Carolina, and forwarded to Jan Lane, Georgetown, Texas |
| 10 | YUSUFF | July 1, 2021 | Identity verification letter from IRS addressed to W.L. & B.L. at Jan Lane, Georgetown, Texas |
| 11 | YUSUFF | July 16, 2021 | Identity verification letter from IRS addressed to D.E. & A.E. at Jan Lane, Georgetown, Texas |
| 12 | YUSUFF | July 16, 2021 | Identity verification letter from IRS addressed to J.E. & H.E. at Jan Lane, Georgetown, Texas |
| 13 | YUSUFF AND EDUARDO | July 10, 2020 | FedEx package from Ellerton Ave, St. Louis, Missouri, to EDUARDO at Louis Henna Blvd, Round Rock, Texas |
| 14 | YUSUFF AND EDUARDO | June 30, 2021 | Wage and Income Transcript from IRS addressed to L.S. at The Lakes Blvd, Pflugerville, Texas |
| 15 | YUSUFF AND EDUARDO | July 16, 2021 | CP301 Notice from IRS to L.S. at The Lakes Blvd, Pflugerville, Texas |

| COUNT | DEFENDANT | APPROXIMATE DATE OF MAILING OR DELIVERY | MAILING |
|---|---|---|---|
| 16 | YUSUFF AND MATHURIN | June 24, 2020 | FedEx package from MATHURIN in Nashville, Tennessee, to YUSUFF at Jan Lane, Georgetown, Texas |
| 17 | YUSUFF AND OGUNBANJO | November 1, 2019 | U.S. Treasury Check from IRS addressed to H.C. & R.H. at Legendary Dr, Austin, Texas |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS EIGHTEEN THROUGH THIRTY-FOUR
Wire Fraud
[18 U.S.C. § 1343]

58. Paragraphs 1 through 45 of this Indictment are realleged and incorporated as though fully set forth herein.

59. Beginning at least in or about January 2018 and continuing at least until in or about December 2021, the exact dates being unknown to the Grand Jury, within the Western District of Texas and elsewhere, the Defendants listed below, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire communication in interstate and foreign commerce, communications, signals, and writings, to wit: electronic text messages.

## THE SCHEME AND ARTIFICE

60. The factual allegations contained in paragraphs 22 through 45 of this Indictment are realleged and incorporated herein as if copied verbatim.

61. It was further part of the scheme and artifice that YUSUFF, INYANG, EDUARDO, ANOZIE, OGUNBANJO, MAMMADOV, and others, both known and unknown to the grand jury, communicated with each other using Telegram by sending electronic text messages, some

of which contained pictures. The electronic text messages were either sent from locations in the Western District of Texas and transmitted across state lines in interstate commerce through Telegram's servers to the recipient or sent from locations outside the Western District of Texas, transmitted across state lines in interstate commerce through Telegram's servers, and received in the Western District of Texas.

## THE WIRE COMMUNICATIONS

62. On or about each date listed below, in the Western District of Texas and elsewhere, the Defendants listed below, for the purpose of executing the scheme and artifice to defraud, and to aid and abet the same, transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds as described for each count below:

| COUNT | DEFENDANT | APPROXIMATE DATE OF WIRE | WIRE COMMUNICATION |
|---|---|---|---|
| 18 | YUSUFF AND EDUARDO | May 2, 2020 | Text messages from EDUARDO to YUSUFF containing an address to which YUSUFF could direct mail |
| 19 | YUSUFF AND EDUARDO | October 16, 2020 | Text messages between EDUARDO and YUSUFF about EDUARDO's purchases of money orders using prepaid debit cards funded by fraudulently claimed tax refunds |
| 20 | YUSUFF AND EDUARDO | February 22, 2021 | Text messages from EDUARDO to YUSUFF telling YUSUFF where to pick up prepaid debit cards EDUARDO obtained |
| 21 | YUSUFF AND ANOZIE | February 29, 2020 | Text messages between YUSUFF and ANOZIE in which they discussed mail ANOZIE received and YUSUFF told ANOZIE to destroy the mail |
| 22 | YUSUFF AND ANOZIE | June 25, 2020 | Text messages from YUSUFF to ANOZIE in which YUSUFF directs ANOZIE to use prepaid debit cards funded by fraudulently claimed tax refunds to purchase money orders in varied amounts to avoid suspicion |

| COUNT | DEFENDANT | APPROXIMATE DATE OF WIRE | WIRE COMMUNICATION |
|---|---|---|---|
| 23 | YUSUFF AND ANOZIE | June 26, 2020 | Text messages from YUSUFF to ANOZIE telling ANOZIE to expect mail for victim-taxpayers at addresses ANOZIE controlled |
| 24 | YUSUFF AND ANOZIE | June 29, 2020 | Text messages between ANOZIE and YUSUFF in which ANOZIE told YUSUFF that he obtained prepaid debit cards and YUSUFF told ANOZIE to send him pictures of the cards |
| 25 | YUSUFF AND OGUNBANJO | December 22, 2019 | Text messages between OGUNBANJO and YUSUFF in which YUSUFF asks OGUNBANJO to send pictures of the IRS mail that OGUNBANJO received |
| 26 | YUSUFF AND OGUNBANJO | February 5, 2020 | Text messages between OGUNBANJO and YUSUFF about how to obtain prepaid debit cards |
| 27 | YUSUFF AND OGUNBANJO | May 19, 2020 | Text messages between OGUNBANJO and YUSUFF about the status of buying money orders with prepaid debit cards funded by fraudulently claimed tax refunds |
| 28 | YUSUFF AND OGUNBANJO | June 10, 2020 | Text messages from OGUNBANJO to YUSUFF containing four addresses to which YUSUFF could direct mail |
| 29 | YUSUFF AND MAMMADOV | January 28, 2020 | Text messages between YUSUFF and MAMMADOV in which YUSUFF directed MAMMADOV to obtain about 15 prepaid debit cards |
| 30 | YUSUFF AND MAMMADOV | March 1, 2020 | Text messages between YUSUFF and MAMMADOV about status of purchasing money orders using a prepaid debit card funded by fraudulently claimed tax refunds |
| 31 | YUSUFF AND MAMMADOV | April 23, 2020 | Text messages between YUSUFF and MAMMADOV about status of purchasing money orders using prepaid debit cards funded by fraudulently claimed tax refunds |
| 32 | INYANG | March 31, 2021 | Text messages between INYANG and CONSPIRATOR 1 in which INYANG directs CONSPIRATOR 1 to purchase money orders using prepaid debit cards funded by fraudulently claimed tax refunds |
| 33 | INYANG | April 16, 2021 | Text messages between INYANG and CONSPIRATOR 1 in which CONSPIRATOR 1 updates INYANG on the current balances of prepaid debit cards funded by fraudulently claimed tax refunds |

| COUNT | DEFENDANT | APPROXIMATE DATE OF WIRE | WIRE COMMUNICATION |
|---|---|---|---|
| 34 | INYANG | April 22, 2021 | Text messages between INYANG and CONSPIRATOR 1 in which INYANG directs CONSPIRATOR 1 to only buy a small amount of money orders using certain prepaid debit cards funded by fraudulently claimed tax refunds to avoid detection |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS THIRTY-FIVE THROUGH FORTY-ONE
### Access Device Fraud
[18 U.S.C. § 1029(a)(2)]

63. Paragraphs 1, 2, 10 through 12, 42, 43, and 49 of this Indictment are realleged and incorporated as though fully set forth herein.

64. On or about the dates listed below, within the Western District of Texas and elsewhere, the Defendant listed below, aided and abetted by others known and unknown to the Grand Jury, did knowingly and with the intent to defraud use an unauthorized access device, namely a debit card described below, and by such conduct, did obtain a thing of value, described below, in the aggregate value of $1,000 or more, said use affecting interstate commerce:

| COUNT | DEFENDANT | ACCOUNT NUMBER AND NAME TO WHOM CARD REGISTERED | APPROXIMATE DATES OF WITHDRAWALS | THING OF VALUE |
|---|---|---|---|---|
| 35 | YUSUFF | x1038, R.A. | April 1, 2021, through May 14, 2021 | Home renovation materials |
| 36 | INYANG | x7286, M.B.-1 | March 22, 2021, through March 27, 2021 | Money orders |
| 37 | INYANG | x5521, K.R. | March 30, 2021, through April 13, 2021 | Money orders |
| 38 | INYANG | x9036, M.D. | March 30, 2021, through April 13, 2021 | Money orders |

| 39 | INYANG | x7946, M.B.-2 | March 30, 2021, through April 16, 2021 | Money orders |
| 40 | INYANG | x3284, E.A. | March 22, 2021, through March 31, 2021 | Money orders |
| 41 | INYANG | x9749, C.D. | April 2, 2021, through April 16, 2021 | Money orders |

All in violation of Title 18, United States Code, Sections 1029(a)(2) and 2.

## COUNTS FORTY-TWO THROUGH SEVENTY-SEVEN
Aggravated Identity Theft
[18 U.S.C. § 1028A]

65. Paragraphs 1 through 64 of this Indictment are realleged and incorporated as though fully set forth herein.

66. On or about each date listed below, within the Western District of Texas and elsewhere, the Defendant(s) listed below did knowingly possess, transfer, and use, without lawful authority, the means of identification of another person during and in relation to the offense in this Indictment as a Predicate Count below, that is, the Defendant knowingly possessed, transferred, and used the name of an actual person known to the Grand Jury, listed by his or her initials below, during and in relation to committing mail fraud, access device fraud, or conspiring to commit fraud:

| COUNT | DEFENDANT | APPROXIMATE DATE(S) OF OFFENSE | PREDICATE COUNT | INDIVIDUAL |
|-------|-----------|-------------------------------|-----------------|------------|
| 42 | YUSUFF | June 21, 2019 | 1 | M.C. |
| 43 | YUSUFF | April 20, 2021 | 1 | G.D. |
| 44 | YUSUFF | September 21, 2020 | 1 | G.E. |
| 45 | YUSUFF | May 7, 2019 | 1 | A.F. |
| 46 | YUSUFF | June 3, 2021 | 1 | D.L. |
| 47 | YUSUFF | April 1, 2021 | 1 | D.M. |
| 48 | YUSUFF | September 3, 2019 | 1 | K.N. |
| 49 | YUSUFF | January 30, 2020 | 1 | H.W. |

| COUNT | DEFENDANT | APPROXIMATE DATE(S) OF OFFENSE | PREDICATE COUNT | INDIVIDUAL |
|---|---|---|---|---|
| 50 | YUSUFF | May 31, 2019 | 3 | J.S. |
| 51 | YUSUFF | July 13, 2019 | 5 | P.L. |
| 52 | YUSUFF | July 18, 2019 | 6 | J.P. |
| 53 | YUSUFF | July 19, 2019 | 7 | P.E. |
| 54 | YUSUFF | July 22, 2019 | 8 | P.K. |
| 55 | YUSUFF | July 22, 2019 | 9 | K.K. |
| 56 | YUSUFF | July 1, 2021 | 10 | W.L. |
| 57 | YUSUFF | July 16, 2021 | 11 | D.E. |
| 58 | YUSUFF | July 16, 2021 | 12 | J.E. |
| 59 | YUSUFF | April 1, 2021, through May 14, 2021 | 35 | R.A. |
| 60 | INYANG | March 22, 2021, through March 27, 2021 | 36 | M.B.-1 |
| 61 | INYANG | March 30, 2021, through April 13, 2021 | 37 | K.R. |
| 62 | INYANG | March 30, 2021, through April 13, 2021 | 38 | M.D. |
| 63 | INYANG | March 30, 2021, through April 16, 2021 | 39 | M.B.-2 |
| 64 | INYANG | March 22, 2021, through March 31, 2021 | 40 | E.A. |
| 65 | INYANG | April 2, 2021, through April 16, 2021 | 41 | C.D. |
| 66 | YUSUFF AND EDUARDO | October 14, 2020 | 1 | G.G.-1 |
| 67 | YUSUFF AND EDUARDO | July 16, 2021 | 1 | J.A. |
| 68 | YUSUFF AND EDUARDO | July 16, 2021 | 1 | J.M. |
| 69 | YUSUFF AND EDUARDO | June 30, 2021 | 14 | L.S. |
| 70 | YUSUFF | May 26, 2021 | 1 | A.M. |
| 71 | YUSUFF | July 7, 2021 | 1 | D.P. |
| 72 | YUSUFF | July 14, 2021 | 1 | M.S. |
| 73 | YUSUFF | July 14, 2021 | 1 | G.G.-2 |
| 74 | YUSUFF | July 14, 2021 | 1 | L.M. |
| 75 | YUSUFF | November 1, 2019 | 17 | H.C. |
| 76 | YUSUFF | February 18, 2020 | 1 | A.B. |

| COUNT | DEFENDANT | APPROXIMATE DATE(S) OF OFFENSE | PREDICATE COUNT | INDIVIDUAL |
|---|---|---|---|---|
| 77 | YUSUFF | March 2, 2020 | 1 | R.S. |

All in violation of Title 18, United States Code, Sections 1028A and 2.

### NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE

### I.   Forfeiture Statute for Frauds and Fraud Conspiracy (18 U.S.C. § 981(a)(1)(C))

As a result of the foregoing criminal violations set forth in Counts One and Three through Thirty, the United States gives notice that it intends to seek the forfeiture of any and all property constituting or derived from the proceeds Defendants, **ABRAHAM YUSSUF, MEGHAN INYANG, CHRISTOPHER EDUARDO, CHRISTIAN MATHURIN, DILLON ANOZIE, BABAJIDE OGUNBANJO, and AYDIN MAMMADOV**, obtained directly or indirectly as a result of said offenses. The Defendants shall forfeit all right, title, and interest in said property to the United States pursuant to Fed. R. Crim. P. 32.2 and 18 U.S.C. § 981(a)(1)(C), which is made applicable to criminal forfeiture by 28 U.S.C. § 2461(c). In pertinent part, Section 981 provides:

**18 U.S.C. § 981.      Civil Forfeiture**
**(a)(1)**  The following property is subject to forfeiture to the United States:
***
        **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to … any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Access Device Fraud (18 U.S.C. § 1029) and Mail Fraud (18 U.S.C. § 1341) are offenses constituting "specified unlawful activity" as defined in section 1956(c)(7).

### II.   Forfeiture Statute for Money Laundering (18 U.S.C. § 982(a)(1))

As a result of the foregoing criminal violations set forth in Count Two, the United States gives notice that it intends to seek the forfeiture of any and all property constituting or derived from the proceeds Defendants, **ABRAHAM YUSSUF, MEGHAN INYANG,**

**CHRISTOPHER EDUARDO, DILLON ANOZIE, BABAJIDE OGUNBANJO, and**

**AYDIN MAMMADOV**, obtained directly or indirectly as a result of said offense. The

Defendants shall forfeit all right, title, and interest in said property to the United States pursuant

to Fed. R. Crim. P. 32.2 and 18 U.S.C. § 982(a)(1), which states:

> **18 U.S.C. § 982.        Criminal Forfeiture**
> **(a)(1)**   The court, in imposing sentence on a person convicted of an offense in violation
> of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United
> States any property, real or personal, involved in such offense, or any property traceable
> to such property.

### III.   <u>Money Judgment</u>

A sum of money that represents the amount of proceeds obtained, directly or indirectly,

property involved in such offense, or traceable to such property as a result of the violations set

forth above for which Defendants are liable.

### IV.   <u>Substitute Assets</u>

If any of the property subject to forfeiture for the violations set forth above, as a result of

any act or omission of a Defendant,

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without

           difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to Title 21, United

States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), of

any other property of said Defendants up to the value of the forfeitable property.

A TRUE BILL:

_____
FORE█

JAIME ESPARZA
UNITED STATES ATTORNEY

By:    _____
MICHAEL C. BOTELER
ASSISTANT CHIEF
MITCHELL T. GALLOWAY
MARY FRANCES RICHARDSON
TRIAL ATTORNEYS
U.S. DEPARTMENT OF JUSTICE, TAX DIVISION